**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| GLORIA PUMPHREY and ANGALYN | ) | |
| JONES, *for themselves and on behalf of all* | ) | |
| *similarly situated individuals*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 3:11cv574 |
| v. | ) | |
| | ) | |
| EXPERIAN INFORMATION SOLUTIONS, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND DISMISSAL OF PLAINTIFFS' CLASS ALLEGATIONS

COME NOW the Plaintiffs, Gloria Pumphrey ("Pumphrey") and Angalyn Jones ("Jones"), collectively "the Plaintiffs", by counsel, and for their Opposition to the Defendant's Rule 12(c) Motion for Judgment on the Pleadings and Dismissal of Plaintiffs' Class Allegations, they respectfully submit this memorandum of law.

## INTRODUCTION

Defendant Experian Information Solutions, Inc. ("Experian") moves to dismiss Plaintiffs' case as a matter of law principally because in *Soutter v. Equifax Info. Servs., LLC*, No. 11-1564, 2012 WL 5992207 (4th Cir. Dec. 3, 2012), based on the factual record before it, the Fourth Circuit found that Soutter's facts were not sufficiently typical of the full class she sought to represent.  Further, because Experian recognizes that this limited ruling—really just regarding the over breadth of Soutter's class definition—would not fatally impact this case (or *Soutter* itself), Defendant also tries to graft various other miscellaneous challenges raised by defendants in other FCRA class cases to prevent the filing of a first amended complaint.  None of these are novel, and none have been found useful in this District or this Circuit.

Yet, beyond the theoretical substance of Experian's defenses, the present motion presents multiple posture problems. First, it is a challenge to Rule 23 class certification prematurely attempted through the use of Rule 12(c).  Second, Experian filed the motion to complicate the impending filing of a motion to consolidate this case with *Soutter*, the case both parties understand is entirely intertwined with this one.  In fact, the motion was filed only after Plaintiffs' counsel advised Defendant's counsel of this intention.  Accordingly, the motion should be denied as moot and if not, denied on its merits.

However, the practical reality faced by the Plaintiffs is that the present class definition and formulations in the Complaint are ineffective.  They should be modified to reflect the explanation by the Fourth Circuit as to its one basis for its reversal of this Court's certification of the class. Accordingly, Plaintiffs contemporaneously move for leave to file their amended Complaint.

## STANDARD OF REVIEW

Motions for judgment on the pleadings pursuant to Rule 12(c) are evaluated under the same standard as a motion to dismiss under Rule 12(b). *Independence News, Inc. v. City of Charlotte*, 568 F.3d 148, 154 (4th Cir. 2009); *accord Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 594 (4th Cir. 2004). Thus, to prevail on a motion for judgment on the pleadings under Rule 12(c), a Defendant must prove that the Plaintiffs have, in taking all factual allegations as true, failed to state a facially plausible claim for relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. However, plausible grounds for a claim "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556. A Rule 12(b)(6) motion to

dismiss, as well as a Rule 12(c) motion for judgment on the pleadings, "tests the legal sufficiency of a complaint and does not resolve contests concerning the facts, the merits of claims, or the applicability of defenses." *Foster v. Wintergreen Real Estate Company*, 2008 WL 4829674, 3 (W.D. Va.); *see also Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). A complaint will survive a Rule 12(c) motion for judgment on the pleadings as long as it sets out facts sufficient for the court to infer that each element of a cause of action is present. *See Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 334-45 (4th Cir. 2006); *Wolman v. Tose*, 467 F.2d 29, 33 (4th Cir. 1972). When considering these motions, the court must construe the complaint in a light most favorable to the plaintiff and assume its factual allegations to be true. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). *See also Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Martin Marietta v. Int'l Tel. Satellite*, 991 F.2d 94, 97 (4th Cir. 1992). "Judgment should be entered when the pleadings, construing the facts in the light most favorable to the non-moving party," indicate that the dispute "can . . . be decided as a matter of law." *O'Ryan v. Dehler Mfg. Co.*, 99 F.Supp.2d 714, 718 (E.D. Va. 2000).

## ARGUMENT

## I.      Rule 12(b)(6) is an Improper Posture to Challenge Class Allegations.

Defendant challenges Plaintiffs' Rule 23 class allegations from an improper posture.  In doing so, it cites a total of approximately 37 cases in support of its argument.  Most, if not all, are at a Rule 23 posture.  Despite being currently at a Rule 12 posture, at this earliest of stages, Defendant burdens the Court with what can at best be characterized as a series of case specific theoretical challenges to class certification in FCRA cases. Defendant's arguments are not now challenges to the adequacy of the Plaintiffs' pleading, but instead improperly premature assertions of fact that will be later refuted upon a motion for class certification.

The issue of whether Plaintiffs' claims are properly brought on a class basis is for determination under Fed. R. Civ. P. 23, and are not commonly the proper subject of a Rule 12 motion. Rather than waste the Court's attention with an elongated discussion of this issue, Plaintiffs' position is sharply stated in a recent comparable decision involving present Plaintiffs' counsel in the Eastern District of Pennsylvania. United States District Judge Dubois, a well-respect jurist, explained in denying the FCRA defendant's Motion to Dismiss:

> In rare cases where it is clear from the complaint itself that the requirements for maintaining a class action cannot be met, a defendant may move to strike the class allegations before a motion for class certification is filed." *NBL Flooring, Inc. v. Trumball Ins. Co.*, No. 10–4398, 2011 WL 4481918, at *1 (E.D. Pa. Sept. 27, 2011). However, district courts within the Third Circuit typically conclude that motions to strike class action allegations filed before plaintiffs move for class certification are premature. *See Valentin* [*v. Sch. Dist. of Phil.*], 2011 WL 5127850, at *3–4. As another court in this District observed,
>
>> [a] motion to strike class allegations under Rule 23(d)(4) seems, for all practical purposes, identical to an opposition to a motion for class certification. Several district courts have held that Rule 23(d)(4) motions to strike class allegations are premature and that the proper avenue is to oppose the plaintiff's motion for class certification.
>
> *Korman v. Walking Co.*, 503 F. Supp. 2d 755, 762 (E.D. Pa. 2007) (citations omitted); *see also Martin v. Ford Motor Co.*, 765 F. Supp. 2d 673, 680–81 (E.D. Pa. 2011); *NBL Flooring*, 2011 WL 4481918, at *1; *Mills v. Serv. First Credit Union*, No. 4:11–CV–686, 2011 WL 3236313 (M.D. Pa. July 28, 2011); *Vlachos v. Tobyhanna Army Depot Fed. Credit Union*, No. 3:11CV0060, 2011 WL 2580657 (M.D. Pa. June 29, 2011). This is because, "to determine if the requirements of Rule 23 have been satisfied, a district court must conduct a 'rigorous analysis,' [in which it] 'may delve beyond the pleadings to determine whether the requirements for class certification are satisfied.'" *Landsman & Funk PC v. Skinder–Strauss Assocs.*, 640 F.3d 72, 93 (3d Cir. 2011) (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309, 316 (3d Cir. 2008)). Discovery and full briefing on the merits of class certification are typically required to conduct this "rigorous analysis." *See Valentin*, 2011 WL 5127850, at *4; *NBL Flooring*, 2011 WL 4481918, at *1; *see also Andrews v. Home Depot U.S.A., Inc.*, No. 03CV5200, 2005 WL 1490474, at *3 (D.N.J. June 23, 2005) ("'[T]he shape and form of a class action evolves only through the process of discovery.'" (*quoting Abdallah v. The Coca–Cola Co.*, No. 1:98CV3679, 1999 WL 527835, at *1 (N.D. Ga. 1999))). Thus, it is "rare" for a court to strike class

4

allegations prior to discovery. *Valentin*, 2011 WL 5127850, at *5; *accord NBL Flooring*, 2011 WL 4481918, at *1.

*Goode v. LexisNexis Risk & Info. Analytics Group, Inc.*, 82 Fed. R. Serv. 3d 1176 (E.D. Pa. 2012). This same conclusion was reached in this District and Division in a decision rendered on December 27, 2012 by United States Magistrate Judge Lauck. *See Goodrow v. Friedman & MacFadyen, P.A., et al.*, No. 3:11CV20, 2012 WL 6725617, at *2, n.2 (E.D. Va. Dec. 27, 2012). *See also Rosenberg v. Avis Rent A Car Sys., Inc.*, No. 07-1110, 2007 WL 2213642 (E.D. Pa. July 31, 2007) ("Defendant seizes on Rosenberg's complaint as an opportunity to attack the merits of the class itself, but that discussion will be appropriate when Rosenberg files his Motion for Class Certification."); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06-715, 2006 WL 3422198 (N.D. Cal. Nov. 28, 2006); *Chong v. State Farm Mut. Auto. Ins. Co.*, 428 F. Supp. 2d 1136, 1146–47 (S.D. Cal. 2006) ("Defendant . . . moves to strike Plaintiff's class allegations . . . Plaintiff counters and, in an opposition that reads like a motion for class certification, argues that her class allegations meet the standard set forth in the Federal Rules of Civil Procedure. Both parties are getting ahead of themselves.").

This case is not one of the very rare circumstances in which the Court can find as a matter of law that no FCRA case could ever be certified as a Rule 23 class action. Further, the early posture sought by Experian for its attack is simply unfair. There is no doubt that at this posture, with the generous light in which the Court must accept Plaintiffs' allegations, Experian would have a more difficult time establishing that the case should not proceed as a class action. The burden is presently on Experian. In contrast, the burden at the class certification stage is clearly on the Plaintiffs under Rule 23 and upon the filing of such a motion later in the case, they must meet such rigorous burden with both facts and law. Thus, Experian seeks to manufacture two bites at this apple—an opportunity not provided under Rule 23.

Even beyond the Rule 12 and Rule 23 posture problems, the Court should deny Experian's motion as moot and permit the filing of Plaintiffs' proposed Amended Complaint, followed by the consolidation of this case with *Soutter*, the case that Experian believes determinative in this matter from its briefing.   There is simply no judicial economy or preservation of the Court's resources in this early demand for finality.

## II.    What Effect Does *Soutter* Have on the Present Case?

In *Soutter*, the Court of Appeals considered a laundry list of Equifax challenges to class certification, including many of the arguments now raised by Experian.  Equifax argued:

a)     that the decision on whether a class should be certified required a rigorous analysis;

b)     that the proposed class was not objectively ascertainable;

c)     that the district court failed to apply the rigorous class certification analysis that Rule 23 requires;

d)     that the case would general no common answers to "common" questions, much less ones that predominated;

e)     that accuracy was an individual issue;

f)     that the reasonableness of Equifax's procedures was an individual issue;

g)     that the question of willfulness was individualized;

h)     that the named plaintiff was not typical and did not adequately represent the class;

i)     that a class action was not a superior mechanism for adjudicating the plaintiff's novel claim;

j)     that adjudicating the case as a class action threatened Equifax with devastating, disproportionate liability; and

k)     that the FCRA provided superior alternatives to class adjudication.

Yet, despite the substantial briefing and argument before the District Court, and then on appeal, the Court of Appeals summarized *Soutter* and its outcome as follows:

On appeal, Equifax contends that Soutter cannot satisfy the typicality or adequacy standards in Rule 23(a) or the predominance and superiority standards in Rule 23(b)(3). We agree with Equifax that Soutter failed to show typicality under Rule 23(a)(3) and, accordingly, that the district court abused its discretion in certifying the proposed class.

*Soutter*, No. 11-1564, 2012 WL 5992207, at *3.

Though the Court of Appeals disclaimed having taken a position on Equifax's various other arguments, there is no doubt that it contemplated the return of this case to a Rule 23 posture before the District Court.  Equifax raised numerous challenges to Judge Payne's findings and decision—mostly repeated in this case by Experian.  The Court of Appeals agreed with and reversed only one of Equifax's challenges—the typicality challenge.  Though it cautiously disclaimed that it was finding neither one way or the other on these separate grounds raised by Equifax, the reality is that Judge Payne's conclusions that were not reversed remain the law of the case.  *United States v. Kayser-Roth Corp., Inc.*, 103 F. Supp. 2d 74, 83 (D.R.I. 2000), *aff'd sub nom. United States v. Kayser-Roth Corp.*, 272 F.3d 89 (1st Cir. 2001) ("Generally, 'when a higher court reverses [on] one ground and remands a case without disturbing other determinations made by a lower court, the determinations not reversed continue to be the law of the case.' *American Title Ins.,* 817 F. Supp. at 257. That is precisely the situation presented in this case." (citation omitted)); *American Title Ins. Co.*, 817 F. Supp. 251, 257 (D.R.I. 1993), *aff'd in part and rev'd in part*, 16 F.3d 449 (1st Cir. 1994) ("Generally speaking, when a higher court reverses one ground and remands a case without disturbing other determinations made by a lower court, the determinations not reversed continue to be the 'law of the case.'"); *Cowgill v. Raymark Indus., Inc.,* 832 F.2d 798, 802 (3d Cir. 1987) (trial court determinations which are not reversed on appeal become the law of a case) ("When a court of appeals reverses a judgment and remands for further consideration of a particular issue, leaving other determinations of the trial court intact, the unreversed determinations of the trial court normally continue to work an estoppel. 1B J. MOORE, J. LUCAS & T. CURRIER, MOORE'S FEDERAL PRACTICE ¶ 30.416[2], p. 517 (3d ed. 1984). When the estoppel is operative in proceedings in the same case on remand,

courts frequently speak in terms of the law of the mandate or the law of the case rather than collateral estoppel but the underlying principle is the same.").

Experian logically challenges Plaintiffs' class definitions on typicality grounds because of the interlocutory result in Soutter. However, it must similarly be prepared to accept the present law of the case that is less to its liking.

## III. Defendant Cannot Establish That As a Matter of Law a FCRA Class Claim Will Always Fail for Lack of Typicality.

### A. Soutter Does Not Hold That Typicality Fails As a Matter of Law.

In *Soutter v. Equifax*, the Court of Appeals held that Soutter's own case did not present facts that were typical of the facts in the broad range of other cases sought to be included in her class definition. In explaining the "typicality" burden, the Court of Appeals offered, "While Soutter's claim need not be 'perfectly identical to the claims of the class she seeks to represent,' typicality is lacking where 'the variation in claims strikes at the heart of the respective causes of action.'" *Soutter*, No. 11-1564, 2012 WL 5992207 at *4. (citation omitted). The Court found that Soutter's claim was not sufficiently typical for her defined class for three reasons.

First, LexisNexis, the vendor that gathered public records for Equifax, "used in-person review for the circuit court records", which were gathered on a manual and ad-hoc basis. Soutter's General District Court facts were not typical for the claims of consumers based on Equifax's failure to obtain circuit court judgment satisfactions. Experian makes this argument and, in fact, the evidence in this case will be the same in this regard. Pumphrey and Jones, each with a General District Court judgment, cannot represent "circuit court" consumers, as the facts in those cases will differ to an improper degree.

Second, the Court of Appeals discerned from the record before it that LexisNexis also used "at least three different means of collecting general district court records during the class

period." The Court of Appeals broke the LexisNexis process down into three methods, each by a specific time period:

> For the general district courts, the Supreme Court provided LexisNexis with bulk data feeds until May 2009. LexisNexis then used independent contractors to verify the bulk feeds in person. In May 2009, the Supreme Court stopped providing these feeds. LexisNexis then used a "webscrape" program to grab the data from the Court's website. This practice ended in December 2009 when the Virginia Supreme Court enacted new security measures, including a challenge-response test, that limited the ability of automated programs to access the public records. LexisNexis thus had to switch exclusively to in-person review from December 2009 to February 2010 for general district court records. LexisNexis admittedly had difficulty performing its task of collecting records from time to time.

*Soutter*, No. 11-1564, 2012 WL 5992207 at *1. Thus, while Soutter, whose judgment was satisfied in early 2009, could represent a class for the earlier of these time periods (until May 2009), if LexisNexis's collection methods had changed as explained, she could not represent the second group (May 2009 through December 2009) or the third group (after December 2009). While Soutter will necessarily conform her remanded claim to such appellate conclusion, there is no evidence offered in the case *sub judice* or alleged in the Complaint to suggest that there was similar diversity in Experian's records gathering. In fact, there will be unrebuttable evidence of the opposite. Such variance did not exist for Pumphrey and Jones.[1] Neither Pumphrey or Jones, nor any other class member, are similarly bound to the extent that the "actual" evidence in a case proves otherwise anymore than is Experian bound by the many other factual conclusions reached

---

[1] In fact, the greatest error in Soutter was not Judge Payne's, but was Plaintiff's counsel's failure to challenge a declaration submitted by Equifax for the first time in its opposition. Mark Johnson, a LexisNexis witness provided Equifax a declaration that truthfully, but incompletely explains that LexisNexis used multiple methods to collect judgment information, including some in-person courthouse visits. This technically truthful claim is misleading as in reality LexisNexis only performed those "in person" reviews after it was contacted by Equifax *to perform a consumer dispute investigation* – not the initial pickup of the disposition. The potential violation of Equifax's dispute investigation duty is not at issue in *Soutter*.

by Judge Payne as to Equifax and not reversed by the Fourth Circuit.   Still, in Plaintiffs'
proposed amended complaint, they have proposed a narrowed sub-class definition to fit within
the *Soutter* typicality structure outlined by the Court of Appeals.   If the evidence in this case
ultimately establishes the variance asserted by Equifax on appeal in *Soutter*, Plaintiffs expect that
the broader class will be necessarily narrowed to such subclasses.

Third and finally, the Fourth Circuit also found that Soutter's proof of willfulness would
be atypical of the willfulness claim of some members of her broad class because she had made a
dispute before her report was then inaccurately furnished, while other class members likely did
not make a dispute before the inaccurate report was furnished.   *Soutter*, No. 11-1564, 2012 WL
5992207 at *5 ("Proof that Equifax's conduct was willful toward Soutter because she sent letters
in advance informing Equifax that the case against her was dismissed will not advance the claims
of other class members.").   In fact, as the Court of Appeals concluded, Soutter had disputed the
Equifax inaccuracy before any report was furnished.   Therefore, Equifax was on a higher degree
of notice for Soutter and other consumers with post-dispute inaccuracies than for inaccuracies
furnished pre-dispute. Alternatively, in this case both Pumphrey and Jones were the subject of
numerous consumer reports during the months that transpired between when their judgment
disposition was filed and when Experian finally updated their credit reports, months later.
Accordingly, they allege pre- <u>and</u> post-dispute credit reports—each a violation of § 1681e(b).
Plaintiffs plead a subclass for each category and both Plaintiffs adequately and typically
represent each subclass.

### B.      Experian's Other Challenges to Typicality Are Inapplicable or Incorrect.

Defendant devotes perhaps one page of its typicality discussion to the *Soutter* appellate
decision and, even then, (understandably) does so by an attempted stretch of the outcome in a

handful of other FCRA cases.  For while the Fourth Circuit in *Souter* narrowed the Equifax case and suggested a higher burden for typicality than previously contemplated, it also clears away the arguments otherwise asserted by Equifax in its District Court opposition, and now by Experian in this motion.  Defendant cannot have it both ways.

For example, in its opening brief, Experian's first "typicality" challenge is a claim that proof of inaccuracy is an essential element of a claim under § 1681e(b) (Plaintiffs agree) and that "this Court concluded that § 1681e(b)'s first element—inaccuracy—prevents class adjudication." Def.'s Mem. at 6 (citing *Williams v. LexisNexis Risk Mgmt., Inc*., No. 3:06CV241, 2007 WL 2439463, at *4 (E.D. Va. Aug. 23, 2007).[2]  In fact, in a footnote, Defendant even highlights present Plaintiffs' counsel's explanation as to why in that case a § 1681e(b) claim could not be adjudicated as a class.   Experian's aggressive argument is itself fatally dependent upon a

---

[2] Experian also incorrectly cites, *Owner-Operator Indep. Drivers Ass'n, v. USIS Commercial Servs., Inc*., 537 F.3d 1184, 1194 (10th Cir. 2008) for its "accuracy" argument.  As Judge Payne explained,

> Furthermore, the two cases that Equifax cites in support of its argument with respect to inaccuracy are distinguishable from the facts in this action. In *Owner–Operator Independent Drivers Ass'n, Inc. v. USIS Commercial Servs., Inc.,* 537 F.3d 1184, 1194 (10th Cir.2008), the Tenth Circuit affirmed a district court's denial of class certification under § 1681e(b) because the district court found that determining the inaccuracy of a report may require an individualized inquiry. However, *Owner–Operator* involved plaintiffs who were alleging that the defendant company violated the FCRA when it disseminated their employment histories with inaccurate information, *id.* at 1186, a far different situation than assessing whether Equifax inaccurately reported a judgment as owing when the public record indicates otherwise.

*Soutter v. Equifax Info. Servs., LLC*, 3:10CV107, 2011 WL 1226025 (E.D. Va. Mar. 30, 2011), *rev'd and remanded on other grounds,* No. 11-1564, 2012 WL 5992207 (4th Cir. Dec. 3, 2012).

decision by Judge Payne in an inapposite case and wholly ignores (or withholds) Judge Payne's opposite conclusion in *Soutter*.   In *Williams*, the inaccuracies at issue varied from consumer to consumer: some had reports that were mixed with other consumers, some had multiple attenuations of a single criminal record, and still others were reported as felons based on a misdemeanor conviction.   In contrast, the determination of inaccuracy in this case is objective and simple.   It can be accomplished by basic computer database macros.   (1) *Does the Supreme Court of Virginia database show that the judgment was satisfied, dismissed or vacated?* (2) *On what date was this disposition filed?*   (3) *When if at all was this disposition included within Experian's credit file? and* (4) *Did Experian furnish a credit report between those two dates that included the inaccurate notation that the judgment was still owed?* This analysis is not complicated and easily automated, as Plaintiffs' counsel proved in the Equifax case by simply hiring a database expert.   Additionally, unlike the discussion in *Williams* (in which Williams never pled or sought to prove a §1681e(b) class claim), in *Soutter*, Judge Payne found:

> According to Equifax, Soutter is not a typical class member for the reason that the facts needed to prove the inaccuracy of her credit report will not advance the claims of absent class members because examination of individual court records and credit files will be required for each class member.
> . . . .
> In response, Soutter has shown that examination of thousands, potentially hundreds of thousands, individual credit files will not be necessary because she can present a specific and detailed search request to the Supreme Court of Virginia that would encompass all judgment dispositions. The Executive Secretary of the Supreme Court of Virginia maintains a database that records electronically a judgment, satisfaction, vacation, dismissal, or appeal when it is entered in the court file the same day. It is then a matter of comparing relatively few data fields to determine whether the judgment disposition event occurred more than 30 days before the "snapshot date," i.e., the date on which Equifax takes a snapshot of a consumer's file at one discrete minute in time each month. Pl.'s Mem. in Supp. of Mot. for Class Certification at 14. Thus, comparison of the Supreme Court of Virginia database with Equifax's records will prove the inaccuracy of Soutter's credit report as well as the inaccuracy of the putative class members' consumer reports and thus advance the interests of the class. This will not be an insubstantial undertaking, but it is sufficient to establish typicality.

12

*Soutter v. Equifax Info. Servs.*, No. 3:10CV107, 2011 WL 1226025, at *9 (E.D. Va. Mar. 30, 2011), *rev'd and remanded on other grounds*, 11-1564, 2012 WL 5992207 (4th Cir. Dec. 3, 2012).   Further, Experian's argument exposes the difficulty of Defendant's attempt to use Rule 12 instead of Rule 23 to oppose class certification.   By asserting, "Plaintiffs cannot prove the first element of their claim—inaccuracy— on a group basis, through a simple comparison of data extracted from the Virginia Supreme Court and Experian databases. Extensive examination of individual court records and credit files would be required", Def.'s Mem. at 8, Defendant asserts a fact claim that ignores contrary allegations in the plausible amended Complaint as well as the empirical proof in *Soutter* that such automated accuracy review can be accomplished.

Beyond "accuracy", Experian also attempts a patchwork of various challenges, each of which it characterizes as "typicality", likely because this is the lone Rule 23 element reversed in *Soutter*.   However, Experian's only basis to support or explain each of its desired result is the pro-consumer reporting agency outcome in the cited cases. Defendant offers *Pendleton v. Trans Union Sys. Corp.*, 76 F.R.D. 192 (E.D. Pa. 1977), and asserts falsely, "The Pendleton court rejected the argument Plaintiffs make here, that 'the reasonableness of the defendant's procedures is an issue common to the class.'" Def.'s Mem. at 7.   To the contrary, Plaintiffs do not make any of the same arguments described in the 1977 *Pendleton* decision.   The case offers nothing to this Court.   *Pendleton* alleged a class without regard to whether a credit report was inaccurate and based solely on whether or not a class member had been denied credit; it tried to combine a laundry list of unrelated inaccuracy problems;[3] it required individualized proof of

---

[3]  The District Court in that case summarized as follows:

Some of the alleged violations include failing to require adequate identification of consumers from subscribers providing information, the lack of any procedures for checking the accuracy of information, the lack of adequate procedures for

actual damages—statutory damages were not yet available in the 1977 statute; and its primary remedy was to be injunctive relief. In fact, it was to this later remedy that Experian's cited—or mis-cited—block quote pertains.

Experian's citation of *Harper v. TransUnion, LLC*, 2006 WL 3762035, at *8 (E.D. Pa. Dec. 20, 2006) is even more out of context.[4] Defendant cites *Harper*, Def.'s Mem. at 7, a case that alleged a negligence claim and sought to certify a case requiring individualized proof of actual damages to support its challenge to typicality, and yet, the passage cited does not relate to typicality. Worse, Experian represents *Harper* as, "holding that each element of § 1681e(b) claim, including the reasonableness of defendant's procedures, 'will require highly individualized proofs as to the injuries suffered by the putative class members'". Def.'s Mem. at 7 (citing *Harper*, 2006 WL 3762035, at *8). The *Harper* Court held no such thing. In fact, it accepted that "reasonableness" would be a class adjudication, but found that damages would be individualized and predominate:

> At oral argument, plaintiff conceded that individual factual inquiries into damages will be required for those class members choosing to pursue actual damages. For this reason, plaintiff argues that the major focus of litigation will be the defendants' conduct vis-a-vis their duty under the FCRA and defendants' resultant degree of liability. Yet in making this argument plaintiff ignores the fact that the defendants' failure to follow reasonable procedures to assure maximum possible accuracy comprises only one of the four elements of a claim under §

---

> removing outdated information from reports, and inadequate procedures for correcting disputed items and notifying subscribers of corrections. Plaintiffs' individual claims illustrate some of these alleged violations. Pendleton alleges that he was denied credit because of a credit report which mistakenly included entries belonging to a different William H. Pendleton. In addition, Pendleton had difficulty getting his report corrected. Plaintiff Nelson claims that she was denied credit because a credit report contained outdated or incorrect information.

*Pendleton v. Trans Union Sys. Corp.*, 76 F.R.D. 192, 194 (E.D. Pa. 1977).

[4] Plaintiffs' counsel recognizes that the defense brief was not written by Experian's Virginia counsel, who likely are unaware of the inaccuracies in the cited passages.

1681e(b). . . . At trial, proof of these three additional elements, though traceable to defendants' conduct and policies, will require highly individualized proofs as to the injuries suffered by the putative class members. Though plaintiffs are not required to outline damages with specificity to state a claim under § 1681e(b), plaintiffs must produce sufficient proof of damages that is more than merely speculative.

*Harper*, 2006 WL 3762035, at *8. As this Court explained in *Souter*:

the plaintiff in *Harper* conceded that individual factual inquiries into damages would be required for those class members choosing to pursue actual damages because both statutory and actual damages were asserted on behalf of the class. *Id.* at *8. In this action, Souter seeks only statutory and punitive damages for the putative class, and those putative class members who wish to pursue actual damages may opt out, thus rendering the individualized inquiries into actual damages and harm suffered that the district court worried about in *Harper* inapposite in this litigation.

*Souter*, No. 3:10CV107, 2011 WL 1226025 at *13.

Finally, Defendant asserts that the determination of willfulness and statutory damages would "necessarily preclude[] class-wide adjudication." Def.'s Mem. at 8. In lieu of any analysis applicable to the facts and claims in this case, Defendant retreats to its citation to inapposite FCRA class cases that had a defense outcome. In both *Gardner v. Equifax Info. Servs.*, Inc., 2007 WL 2261688 (D. Minn. Aug. 6, 2007), and *Barnett v. Experian Info. Solutions*, 2004 WL 4032909 (E.D. Tex. Sept. 30, 2004), the court considered a FCRA claim brought under 15 U.S.C. § 1681i(a), which imposes a series of reporting agency duties to conduct a "reasonable reinvestigation" when a consumer makes a dispute. Despite Experian's contention, neither court found the consumer class claim lacking in typicality. The issue that barred class certification was Rule 23(b) predominance. Both cases rightly found that an allegation that an agency does not conduct reasonable reinvestigations of disputes would require a review of each consumer letter to make such determination.

The problem with Defendant's position is that it requires more than a typicality challenge

for its argument that "willfulness may include some individualized inquiries".  The cases cited by Experian found in those circumstances that individualized components in the "willfulness" determination of a § 1681i(a) (dispute reinvestigation) claim would predominate over class or common issues.  In contrast, the Fourth Circuit in *Souter* did not reach such a conclusion. Nowhere in the majority opinion does it state that willfulness liability is an individualized question. *See Souter v. Equifax Info. Servs., LLC*, No. 11-1564, 2012 WL 5992207 (4th Cir. Dec. 3, 2012).  Instead, the Court of Appeals simply found that Souter's claim, in circumstances in which she had previously made a dispute, were not typical for consumers who had not made such a dispute.  This makes sense, given the element of notice in a FCRA willfulness determination; consumers who have previously disputed an inaccuracy have a stronger claim as to willfulness than those who have not provided such "dispute notice".  This was the typicality decision reached on appeal.  In fact, the Court of Appeals did not find that this issue was "individualized", but only that this typicality divide was "exacerbated because Souter is claiming only statutory damages, which typically require an individualized inquiry." *Souter*, No. 11-1564, 2012 WL 5992207, at *5.  The amount of statutory damages may have an individualized component, based on the number of violations made to each class member, but this has nothing to do with typicality and is not a bar to the Predominance threshold for class adjudication.  *Stillmock v. Weis Markets, Inc.,* 385 Fed. App'x 267, 273 (4th Cir. 2010) ("[W]here, as here, the qualitatively overarching issue by far is the liability issue of the defendant's willfulness, and the purported class members were exposed to the same risk of harm every time the defendant violated the statute in the identical manner, the individual statutory damages issues are insufficient to defeat class certification under Rule 23(b)(3).  .  .  . Pragmatically, the only substantive difference between putative class members for purposes of

affixing the statutory damages figure within the statutory damages range of $100 to $1,000 or in

awarding punitive damages is the number of [FCRA violations suffered].")    In contrast to

Defendant's mistaken read of *Soutter*, as it regards "willfulness" liability this Court has found:

> LexisNexis argues that a "willfulness" claim requires individual proof. It bases
> this argument on the Supreme Court's recent decision in *Safeco Insurance Co. v.*
> *Burr,* No. 06-84 (June 4, 2007). In *Safeco,* the Supreme Court held that
> "willfulness" under the FCRA is "conduct . . . entailing an unjustifiably high risk
> of harm that is either known or so obvious that it should be known." Slip op. at
> 19. LexisNexis draws from this that *Safeco* requires two-step analysis-whether the
> violation occurred, and whether the violation was reckless-and that this analysis
> requires a court to examine the circumstances of each individual. Accepting
> *arguendo* LexisNexis' characterization that *Safeco* requires a tiered inquiry, the
> Court nonetheless fails to see why recklessness requires inquiry into individual
> circumstances. In the § 1681i class, LexisNexis adopted a standard procedure to
> require photocopies of at least two forms of identification before beginning any
> inquiry. In the case of the § 1681k class, LexisNexis adopted a standard procedure
> not to send notices simultaneously with the access it gave to Plaintiffs' employers.
> The Plaintiffs' class allegations charge that these standard procedures violated the
> FCRA, and that, in adopting these procedures, LexisNexis willfully violated the
> FCRA. It is not readily apparent how an inquiry directed at LexisNexis' state of
> mind in adopting standard procedures is affected by any particular case in which
> those standard procedures were applied. Nor does LexisNexis explain why that
> would be so.

*Williams*, No. 3:06CV241, 2007 WL 2439463 at *6.  In fact, every decision known to Plaintiffs'

counsel in this Circuit that has considered this issue has concluded that the basic determination

of whether or not a consumer reporting agency's conduct was "willful" is predominantly a class

issue.  Further, in several of these decisions, the Fourth Circuit accepted the District Court's

order certifying an FCRA class without granting interlocutory appeal.  *See, e.g.*, *Williams*, No.

3:06CV241, 2007 WL 2439463, *interlocutory appeal denied*, No. 07-251 (4th Cir. October 9,

2007); *Harris v. Experian Info. Solutions, Inc.*, No. 6:06CV1808 (D.S.C. May 29, 2008),

*interlocutory appeal denied*, No. 08-198 (4th Cir. Sept. 3, 2008) ("Finally, the issue of each

Defendant's conduct is clearly a classwide question.  Whether each Defendant acted willfully or

negligently is one that is the same for each class member.") (attached hereto as Ex. "A"); *Clark*

*v. Experian Info. Solutions, Inc.*, No. 8:00-1217-24, 2002 WL 2005709 (D.S.C. June 26, 2002), *interlocutory appeal denied*, No. 02-208 (4th Cir. Nov. 15, 2008). *See also Cappetta v. GC Servs. Ltd. P'ship.*, No. 3:08CV288, ECF No. 225 (E.D. Va.) (granting Plaintiff Cappetta's Motion for Class Certification).

In summary, there are no obstacles forcing a conclusion that, as a matter of law, no FCRA claim may be certified as a class because of the Defendant's various typicality challenges.

## IV.  Plaintiffs and Their Counsel Are Not Inadequate As a Matter of Law.

First, Plaintiffs' have plausibly pled in both their original Complaint and their proposed amended Complaint that the Plaintiffs and their counsel are adequate, lacking in any conflict or foul motive and possessing the skill and commitment necessary to prosecute this case.  Those allegations are plausible and are sufficient under Rule 12. The underlying premise of a class action is that litigation by representative parties adjudicates the rights of all class members, and therefore basic due process requires that the named Plaintiff possess undivided loyalties to absent class members. *Broussard v. Meineke Discount Muffler Shops, Inc*., 155 F.3d 331, 338 (4th Cir. 1998) (citing *e.g.*, *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig*., 55 F.3d 768, 785, 796 (3rd Cir. 1995).  Representation will be considered "adequate" if the class representatives are not disqualified by reason of interests antagonistic to the rest of the class. *Ostrof v. State Farm Mut. Auto. Ins. Co.*, 200 F.R.D. 521, 530 (D. Md. 2001).  "The burden is on the defendant[] to demonstrate that the representation will be inadequate."  *Johns v. Rozet*, 141 F.R.D. 211, 217 (D.D.C. 1992); *see also In re Se. Hotel Props. Ltd. P'ship Investor Litig*., 151 F.R.D. 597, 607 (W.D.N.C. 1993); *Lewis v. Curtis*, 671 F.2d 779, 788 (3rd Cir. 1982); *Trautz v. Weisman,* 846 F. Supp. 1160, 1167 (S.D.N.Y. 1994).

Defendant argues that Plaintiffs are inadequate as they are seeking only statutory and punitive damages and not something more.  Def.'s Mem. at 10–11.  This argument has been rejected again and again in both this District and this Circuit, among others.  In fact, nearly every court to consider this question has accepted a statutory damages FCRA class and ruled similarly.[5]  *See, e.g., Stillmock,* 385 Fed. App'x at 273; *Williams*, No. 3:06CV241, 2007 WL 2439463 at *4; *Cappetta*, No. 3:08CV288, ECF No. 225; *Clark*, No. 8:00-1217-24, 2002 WL 2005709, at *3.  Indeed, this Court rejected this exact argument on the present facts in *Soutter*. Judge Payne explained:

> The conflict alleged by Equifax rests on the hypothetical and speculative prediction that there are numerous putative class members who would seek to litigate substantial actual damage claims.
> . . . .
>     The Court can discern no fundamental conflict between Soutter and putative class members who may wish to assert actual damages based on this record. *See Clark v. Experian Info. Solutions, Inc.,* Nos. Civ. A. 8:00–1217–24, 8:00–1218–24, 8:00–1219–24, 2002 WL 2005709, at *3 (D.S.C. June 26, 2002) (finding that plaintiffs adequately represented class despite seeking only statutory damages in claim under § 1681e(b) because over a three-year period, only twenty-two lawsuits out of a potential class of 40,000 to 100,000 members had been filed against the defendants addressing the practices challenged by plaintiffs).

---

[5] *See, e.g., Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492, 501 (E.D. Pa. 2009); s*ee also Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702 (6th Cir. 2009), *cert. denied*, 130 S. Ct. 2379 (2010) (reversing denial of class certification in an FCRA case alleging only statutory damages); *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 392 (N.D. Ill. 2006) (certifying a class under the FCRA and rejecting defendant's argument that damages were an individual issue as "a nonstarter" because the class sought only statutory damages, and class members with actual damages could opt out); *Murray v. New Cingular Wireless Servs., Inc.*, 232 F.R.D. 295, 302 (N.D. Ill. 2005) (certifying a class under the FCRA and noting "since the class is requesting statutory as opposed to actual damages, the existence of individual damages is not a barrier to class certification"); *Farrow v. Capital One Auto Fin., Inc., et al.*, Civil No. CCB-06-2324 (D. Md. May 18, 2007); *Asbury v. People's Choice Home Loan, Inc.,* 2007 WL 809531 (N.D. Ill. March 12, 2007); *Campos v. ChoicePoint, Inc.*, 237 F.R.D. 478 (N.D. Ga. 2006); *Wanek v. C.M.A. Mortg., Inc.*, No. 05cv4775, slip op. at 3 (N.D. Ill. April 17, 2006); *Murray v. Sunrise Chevrolet, Inc.*, No. 04 C 7668, 2006 WL 862886, at *3 (N.D. Ill. March 30, 2006); *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 392 (N.D. Ill. 2006); *Murray v. Cingular Wireless II, LLC*, 242 F.R.D. 415, 418 (N.D. Ill. 2005).

*Soutter v. Equifax Info. Servs., LLC*, 3:10CV107, 2011 WL 1226025, at *11 (E.D. Va. Mar. 30, 2011) *rev'd and remanded on other grounds,* 11-1564, 2012 WL 5992207 (4th Cir. Dec. 3, 2012).

Regardless, and contrary to the non-Fourth Circuit decisions offered in Defendant's footnote, the inclusion of a full opt-out right for absent class members fully cures the possible impact of a statutory and punitive damages class for any class member who may believe he can establish and prove damages and causation. As this Court explained,

> Rule 23(c)(2) contemplates the protection of a class member's opt-out right, which is sufficient in this case to allow those class members who desire to pursue actual damage claims under § 1681e(b) to do so. Thus, representation is not inappropriate on those grounds.

> Because Soutter has demonstrated that both she and her counsel are adequate representatives of the putative class to conduct this litigation, the adequacy prerequisite is satisfied.

*Soutter*, 3:10CV107, 2011 WL 1226025, at *11. It is conceivable that a small number of consumers may otherwise choose to prosecute a claim for actual damages greater than available statutory damages. In such event, Rule 23(c)(2) contemplates the protection of a class member's opt out right. The Fourth Circuit has found this protection not just relevant, but sufficient. *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430–32 (4th Cir. 2003) ("Rule 23(c)(2) permits members of a class maintained under section (b)(3) to opt out of the class, providing an option for those Plaintiffs who wish to pursue claims against TPCM requiring more individualized inquiry. Thus, rhetoric aside, Plaintiffs with only direct claims are not being '[j]amm[ed],' 'sacrificed' or 'caught' in any class action against their will." (citation omitted)). This is the conclusion of the Seventh Circuit as well. *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952–53 (7th Cir. 2006) ("When a few class members' injuries prove to be substantial,

they may opt out and litigate independently." (citing *Jefferson v. Ingersoll Int'l, Inc.*, 195 F.3d 894 (7th Cir. 1999))).

## V.   Plaintiffs' Proposed Amended Complaint Adequately Pleads Common Issues and Predominance.

Defendant argues that the common issues pled in the initial Complaint are not adequate, and therefore the class claims lack both Commonality and Predominance.  Rather than argue, Plaintiffs seek to amend their complaint in order to provide more detailed common questions of fact and law.  As a result, Plaintiffs are filing a motion to amend their Complaint contemporaneously with this brief.

## VI.   The Complaint Adequately Alleges That Class Adjudication Is Superior.

Experian boldly argues that as a matter of law every FCRA class case must necessarily fail under Rule 23 as inferior—not superior—to individual litigation.  Its patchwork abuse of some FCRA class cases continues with Experian's three arguments:  (1) the availability of a fee-shifting remedy in the FCRA would adequately incentive consumers to bring these cases individually; (2) the possibility of steep damages against Experian because the number of consumer class members renders class treatment inferior; and (3) individual cases exist.

First, the idea that a comparable number of consumers would bring individual actions for statutory damages between $100 and $1,000 and successfully find a skilled lawyer to take the case on contingency is incredible.  The Fourth Circuit has already rejected just such an attack:

> Weis Markets argues that the availability of attorney's fees and punitive damages under FCRA makes individual lawsuits feasible.
>
> Weis Markets' argument is without merit. First, the low amount of statutory damages available means no big punitive damages award on the horizon, thus making an individual action unattractive from a plaintiff's perspective. Second, there is no reasoned basis to conclude that the fact that an individual plaintiff can recover attorney's fees in addition to statutory damages of up to

$1,000 will result in enforcement of FCRA by individual actions of a scale comparable to the potential enforcement by way of class action.

*Stillmock*, 385 F. App'x at 274.[6] Regardless, at this stage all Plaintiffs need do is allege a plausible basis for their class claims. They have done so.

Second, Experian appears to believe its argument serious that "there has already been individual litigation of the same type of claims presented here." Def.'s Mem. at 15. Though the number of consumers affected is likely in the tens, if not hundreds of thousands, Defendant can identify only a single case—the now settled matter *Soutter v. Experian Info. Solutions, Inc.*, No. 3:09CV695 (E.D. Va.) that preceded the *Soutter* case against Equifax. However, Experian's national counsel withholds from the Court the claims and disposition in that case. In *Soutter v. Experian*, the consumer had made a dispute, which was prosecuted on an individual basis as a violation of 15 U.S.C. § 1681i(a). The claim for violation of § 1681e(b) was dismissed voluntarily before settlement of the separate § 1681i(a) claim. The claim under § 1681i does not impact the § 1681e(b) claim to be adjudicated on a class basis. Not a single consumer has brought and prosecuted a § 1681e(b) case against Experian; even the *pro se* state case against Equifax suggested in Defendant's brief was based on the consumer's disputes to Equifax. Moreover, if these were the only cases ever brought under the FCRA, clearly class treatment would be superior as two cases (or even 100 cases) would not be comparable to class treatment on behalf of tens or hundreds of thousands of consumers. *See Soutter*, No. 3:10CV107, 2011 WL 1226025, at *15 ("Equifax's own evidence in the present case demonstrates this point with respect to the FCRA. Only two other individuals, a married couple, have brought a lawsuit in

---

[6] Oddly, Experian asks the Court to ignore the Fourth Circuit's decision in *Stillmock* because, the "case is, however, unpublished and contrary to the published and binding guidance in Thorn." Def.'s Mem. at 15, n.5. Defendant apparently misses the irony of such criticism of *Stillmock* in a brief in which it relies so heavily on the unpublished decision in *Soutter*.

Virginia alleging a violation of § 1681e(b) and seeking actual damages. Two individuals filing a lawsuit, out of hundreds (perhaps many more) of class members that likely will be represented in a class action, illustrates that individual enforcement under the FCRA cannot occur on a comparable scale to a class action, and therefore the class action is a superior method to trying this claim.").

Lastly, Experian tries to resurrect an FCRA class defense that has been almost universally rejected over the last several years—that "class-wide adjudication would unfairly threaten Experian with disproportionate liability."  Def.'s Mem. at 15. This assumes then that no FCRA case could be certified as a class action.  Nothing presented in this case raises a basis to find that Experian would be annihilated by a class verdict.  Particularly at this premature stage, there is no evidence in the record regarding the magnitude of a verdict that might be large enough to "devastate" Experian.  More importantly, there is no conceivable method the court could use at this stage of the litigation to weigh the harm to the class caused by Experian's procedures, let alone compare it to some hypothetical verdict figure.

While, in his concurrence in *Stillmock*, Judge Wilkinson was troubled that classwide statutory damages in a FACTA case might "bankrupt[]" a business even though "no plaintiff has suffered any actual harm," 385 Fed. App'x. at 276, and that the violation is merely "somewhat technical", *id.*, neither of these concerns is present here.  The proposed class members here have suffered actual harm in the form of a negative impact on their borrowing power due to being portrayed as less creditworthy than they actually are, even if that harm is difficult to quantify and actual damages would be difficult to prove.[7]

---

[7] The fact that harm from violations of the FCRA may be "hard to quantify" is precisely why the statute provides for statutory damages.  *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006).

Had Congress intended to limit class actions to those that would not have a "devastating, disproportionate impact" on the defendant, it could have included a cap on class-action damages, such as the $500,000 absolute maximum in Fair Debt Collection and Truth in Lending cases.[8] *Murray v. GMAC*, 434 F.3d at 953.   As Judge Payne explained while rejecting this exact argument, "Furthermore, the legal premise for LexisNexis' argument is without merit. . . . '[I]t is not appropriate to use procedural devices to undermine laws of which a judge disapproves. . . . While the [FCRA] remains on the books, . . . it must be enforced rather than subverted. An award that would be constitutionally excessive may be reduced, but constitutional limits are best applied after a class has been certified.'" *Williams*, No. 3:06CV241, 2007 WL 2439463, at *9 (citation omitted).

For these reasons, most lower courts and all appellate courts have rejected the Defendant's argument that class certification of FCRA and other federal statutory damages claims should be denied on the ground that the damages ultimately awarded might be excessive or disproportionate to the harm.[9]

---

[8] 15 U.S.C. § 1692k(a)(2)(B)(ii) (total recovery may not exceed "the lesser of $500,000 or 1 per centum of the net worth of the debt collector"); Truth in Lending Act, 15 U.S.C. § 1640(a)(2)(B) (same except net worth of "creditor").

[9] *See, e.g.*, *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010) (allowing consideration of the potential enormity of any damages award would undermine the compensatory and deterrent purposes of FACTA; finding no Congressional intent for courts to consider the proportionality of the actual damages to the potential class award in deciding whether to certify a class); *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301 (11th Cir. 2009) (rejecting as-applied constitutional challenge to statutory damages for FACTA violations as premature; rejecting facial challenge because at least some individuals may have suffered actual harm commensurate with the range of available statutory damages); *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) ("An award that would be unconstitutionally excessive may be reduced, *see State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003), but constitutional limits are best applied after a class has been certified. . . . While a statute remains on the books . . . it must be enforced rather than subverted."); *Ashby v. Farmers Ins. Co. of Oregon,* 592 F. Supp. 2d 1307, 1316 (D. Or. 2008); *In re Farmers Ins. Co., Inc. FCRA Litig.*, 738 F. Supp. 2d 1180 (W.D. Okla. 2010); *Roberts v.*

The possibility of a large jury award actually weighs in favor of class certification. Where individual recovery may be small, additional weight should be given to a class action where the aggregate recovery may be large. When the magnitude of "the fraud or other wrongdoing that will go unpunished if class treatment is denied" is high, it raises the bar for a finding that a class action is inferior to other alternatives for just that reason. *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). "[A] class action has to be unwieldy indeed before it can be pronounced an inferior alternative-no matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied-to no litigation at all." *Id.*; *see also New England Carpenters Health Benefits Fund v. First Databank, Inc.*, 244 F.R.D. 79, 88 (D. Mass. 2007).

## VII.  Experian Cannot Establish That the Class Is Unascertainable As a Matter of Law.

Experian's ascertainability challenges have been addressed above. First, the Complaint adequately and plausibly alleges that Experian's systems are as capable as Equifax's and can be used to derive the identify of each class member.  Contrary to Defendant's unsupported assertion, the judgment status for every consumer subject to a Virginia court judgment can be determined by an automated review of the Virginia Supreme Court database.  As Plaintiffs have alleged in this case and proven in the *Souter* case against Equifax, the Virginia Supreme Court database is readily provided to Plaintiffs' counsel and can be simply compared to the Experian datafiles to identify class members.  As this Court explained,

> Souter's proposed class definition sets forth objective parameters with which a
> class can be ascertained and identified: either an individual has had a Virginia

---

*The Source for Public Data*, 2009 WL 3837502 (W.D. Mo. Nov. 19, 2009); *Summerfield v. Equifax Info. Servs., LLC*, 2009 WL 3234191, at *9 (D.N.J. Sept. 30, 2009); *Kesler v. Ikea U.S. Inc.*, 2008 WL 413268 (C.D. Cal. Feb. 4, 2008); *Reynoso v. S. Cnty. Concepts, Inc.*, 2007 WL 4592119 (C.D. Cal. Oct. 15, 2007); *Holloway v. Full Spectrum Lending*, 2007 U.S. Dist. LEXIS 59934 (C.D. Cal. June 26, 2007); *Pirian v. In-N-Out Burgers*, 2007 WL 1040864, at *5 (C.D. Cal. Apr. 5, 2007); *White v. E-Loan, Inc.,* 2006 WL 2411240, at *8, n.8 (N.D. Cal. 2006); *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.*, 50 P.3d 844, 851 (Ariz. 2002).

judgment, or not; either an individual has had that judgment modified, satisfied, vacated, appealed, dismissed or otherwise extinguished, or not; either Equifax reported the judgment, or it did not; and either Equifax reported the update to the judgment, or it did not. Thus, Equifax's first argument on ascertainability fails.

*Soutter*, No. 3:10CV107, 2011 WL 1226025 at *6.

Finally, Defendant's "self-identification" argument is moot in light of the class definition alleged in the amended complaint. None is required. Instead, Plaintiffs only seek statutory and punitive damages.

## VIII.   The Court Should Permit Leave to File the Amended Complaint.

Defendant argues that the Court abandon the Rule 15 presumption that leave to amend be liberally granted because (1) the majority opinion in *Soutter* implied criticism of the plaintiff having amended the class definition at least four times and (2) for the reasons stated in its motion to dismiss, amendment would be 'futile.' Def.'s Mem. at 19. Yet, for reasons argued in brief both at the District Court and the Court of Appeals, class certification necessarily requires an adaptive class definition as new evidence is uncovered and legal positions develop. The Fourth Circuit acknowledged that the definition in *Soutter* may well be changed again in its footnote reminding the District Court on remand to rigorously apply Rule 23. *See Soutter v. Equifax Info. Servs., LLC*, No. 11-1564, 2012 WL 5992207, at *4. Of course, Plaintiffs have addressed Defendant's futility arguments herein as their opposition to the present motion, and they additionally rely upon and incorporate the arguments made in their contemporaneously filed motion for leave to amend.

## CONCLUSION

For the reasons stated above, the Defendant's Rule 12(c) Motion for Judgment on the Pleadings and Dismissal of Plaintiffs' Class Allegations should be denied.

Respectfully submitted,
**GLORIA PUMPHREY and**
**ANGALYN JONES,**
for themselves and on behalf of all similarly
situated individuals


By: _____/s/_____
                    Of Counsel


MATTHEW J. ERAUSQUIN, VSB No. 65434
JANELLE E. MASON, VSB No. 82389
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel:    (703) 273-7700
Fax:    (888) 892-3512
matt@clalegal.com
janelle@clalegal.com

LEONARD A. BENNETT, VSB No. 37523
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J Clyde Morris Boulevard, Suite 1A
Newport News, VA 23601
Tel:    (757) 930-3660
Fax:    (757) 930-3662
lenbennett@clalegal.com

DALE W. PITTMAN, VSB No. 15673
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, Virginia 23803
Tel:    (804) 861-6000
Fax:    (804) 861-3368
dale@pittmanlawoffice.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of January, 2013, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Joseph W. Clark
Mark R. Lentz
JONES DAY
51 Louisiana Avenue, NW
Washington, D.C. 20001-2113
Tel:    202-879-3697
Fax:    202-626-1700
jwclark@jonesday.com
mrlentz@jonesday.com

Daniel J. McLoon
JONES DAY
555 South Flower Street, Fiftieth Floor
Los Angeles, CA 90071
Tel:    213-243-2580
Fax:    213-243-2539
djmcloon@jonesday.com

*Counsel for the Defendant*

_____/s/_____
Janelle E. Mason, VSB No. 82389
Consumer Litigation Associates, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel:    (703) 273-7700
Fax:    (888) 892-3512
janelle@clalegal.com
